**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **BRITTANY N. MONTELARO** | * | **NO. 26-CV-00817** |
| | * | |
| **VERSUS** | * | **JUDGE BRIAN A. JACKSON** |
| | * | |
| **START CORPORATION, ET AL** | * | **MAG. JUDGE SCOTT D. JOHNSON** |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANT HANNAH RILES**

**MAY IT PLEASE THE COURT:**

Defendants, Hanah Riles (improperly identified in the Complaint as "Hanna Ellis") (hereinafter referred to as "Riles") respectfully submits this memorandum in support of her motion to dismiss the claims asserted against her by Plaintiff, Brittany N. Montelaro ("Plaintiff"), for the following reasons.

## I. PERTINENT STATEMENT OF THE CASE

Plaintiff, a single mother of three children and an active participant in federal housing stabilization programs and the Strategies to Empower People (STEP) program, instituted this civil rights action on July 27, 2026. In this action, she names as defendants fifty-one (51) state and local governmental bodies, officials, and employees, private companies, and private individuals. Rec. Doc. 1. Of those defendants, defendant Riles, movant herein, is a deputy clerk with the Zachary City Court, identified as "a judicial actor[] executing summary eviction records," *Id,* ¶10. Riles is sued in her individual capacity. *Id,* pg. 8.

Plaintiff's complaint against Riles stems from Plaintiff's rental of a home in the City of Zachary and subsequent proceeding in Zachary City Court. Specifically, Plaintiff alleges that, due to financial difficulties, she was required to use an emergency federal housing voucher to lease a rental property on David Street in Zachary, managed by Ronell Raymond and/or Rayco Properties

& Services, LLC. *Id*, ¶¶18-19. She contends that Raymond thereafter caused a notice to vacate the property to issue based "contrived lease violations." *Id,* ¶25.

Judge David Conachen[1] of Zachary City Court presided over the eviction action. In connection with that matter, Plaintiff hand-delivered a "formal pre-trial [d]iscovery and [r]ecords [d]emand to the Zachary City Court filing window" in order to obtain municipal utility records to prove the prior vacancy of the property. *Id,* ¶28. She complains that, during the eviction hearing, Judge Conachen suppressed her witness subpoenas, did not allow the entry of her utility records into evidence, and refused to review an admission of trespass on the property during her occupancy. *Id,* ¶31. Judge Conachen ultimately ordered the eviction of Plaintiff and her children from the David Street property. *Id,* ¶32.

After her eviction from David Street, Plaintiff located a second property to rent through defendant Travis Baker and/or Selling Louisiana Realty on Buchanan Street in an unidentified city or parish. Rec. Doc. 1, ¶34. Subsequently, Plaintiff submitted a "new property package" to the Louisiana Housing Corporation's ("LHC") portal. *Id,* ¶ 36. She contends that LHC tracking coordinators "Hanna Ellis and Winona Connor intercepted the file and altered the contract parameters, shorting Plaintiff's standard 12-month lease down to an arbitrary 9-month window." *Id.,* ¶36. Thereafter, "Plaintiff sent a direct text message to Connor and Davis objecting to the parameter modification and refusing to sign a distorted contract that compromised her family's long-term housing security." *Id.,* ¶38.

The complaint asserts violations of 42 U.S.C. 1983; 42 U.S.C. 1985(3); the Fair Housing Act, 42 U.S.C. 3617; the McKenney-Vento Homeless Assistance Act, 42 U.S.C. 11431 et seq; 18

[1] Judge Conachen is a defendant in this action and is separately represented in this matter. See, Rec. Doc. 21.

U.S.C. 1001, and La. R.S. 14:133. Plaintiff prays for an award of compensatory and punitive damages. *Id, prayer for relief.*

## <u>II. LAW AND ARGUMENT</u>

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint against Rule 8's legal standard that requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotations omitted.) The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id,* citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Additionally, a plaintiff's pleading obligation requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the revieing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

Plaintiff fails to specify which cause of action she brings against Riles. However, to the extent that a fair reading of the complaint can be interpreted to assert both a 42 U.S.C. § 1983 due process claim and a civil rights conspiracy claim pursuant to 42 U.S.C. §1985(3) against Riles, Riles submits that the complaint fails to state a viable claim under either provision.

**A. Plaintiff Fails to State Claim against Riles Related to the David Street Eviction.**

1. Procedural Due Process Claim. Plaintiff's complaint taken as a whole attempts to assert a procedural due process claim. In such claims, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Bowlby v. City of Aberdeen, Miss.* 681 F.3d 215, 222 (5th Cir. 2012) citing *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.ED.2d 100 (1990). (emphasis removed.) Procedural due process claims consider "only the means by which the deprivation was effected." *Bowlby,* 581 F.3d at 222.

In addition to failure to plead any causes of action with specificity, Plaintiff also fails to identify any specific acts taken by deputy clerk Riles that violated her due process rights. In fact, the complaint contains no factual allegations at all as to any acts taken by Riles as a deputy clerk.[2] While Plaintiff alleges general deprivations of her alleged property interests in her federal housing voucher and her stabilization benefits, she identifies no specific conduct attributable to deputy clerk Riles. "A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. It is not enough for a plaintiff to simply allege that something unconstitutional happened to him or her. Plaintiff's failure to identify specific conduct by deputy clerk Riles that caused the alleged deprivation is fatal to her claim.

Furthermore, even if a generous reading of the complaint could suggest that Riles was somehow involved in the hand-delivering of the "pre-trial discovery and records demand" seeking City utility records on June 23, 2026, that does not rise to a procedural due process violation. First, the act of responding to a request to file "pre-trial discovery" is not connected to Plaintiff's use of

[2] The allegation against "Ellis" aka Riles concerning submittal of property package to LHC will be addressed separately below.

a federal housing voucher or contractually-guaranteed stabilization benefit – the property rights of which she was allegedly deprived. Even so, her own allegations undercut her procedural due process claims as it pertains to the City Court eviction proceeding. She admits that she discussed and/or attempted to enter into evidence the disputed "utility vacancy evidence" at the eviction hearing but was ultimately denied by Judge Conachen. Rec. Doc. 1, ¶31. Thus, she admits that she had notice of the eviction proceeding, opportunity to attend the hearing (and did in fact attend), and opportunity to provide evidence in support of her position. See, *Landers v. Adelstein,* 858 F.App'x 154, 155 (5th Cir. 2021)(U.S. 5th Circuit finding that a complaint failed to state a claim for denial of constitutional right for failure to show denial of opportunity to be heard in a meaningful manner.) Thus, Plaintiff's own allegations are fatal to her procedural due process claim as it relates to the eviction action.

Accordingly, Plaintiff fails to state a procedural due process claim under Section 1983 against Riles, and her claims should be dismissed.

2. Section 1985(3) Claim

42 U.S.C. §1985(3) prohibits, in pertinent part, conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." To state a cognizable claim under Section 1985(3), a plaintiff must allege that "(1) a racial or class-based discriminatory animus lay behind the conspiracy and (2) the conspiracy aimed to violate rights protected against private infringement." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001). "It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' ... its adverse effects upon an identifiable group." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271–72, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).

Just as for the Section 1983 claim, it is also unclear whether Plaintiff intends to assert a Section 1985 cause of action against Riles. To the extent that she does, such claim must likewise fail. First, Plaintiff fails to identify what race-based or class-based discrimination she suffered or how she was otherwise treated differently. Second, Plaintiff identifies no action taken by Riles that could form the basis of an alleged conspiracy with others. Nor does she offer any allegations that suggest any race- or class-based animus on the part of Riles. Finally, Plaintiff does not offer any allegations that Riles took any particular action "because of adverse effects upon an identifiable group." *Bray, supra.*

For these reasons, Plaintiff's Section 1985 claims against deputy clerk Riles should be dismissed.

**B. Plaintiff Fails to State a Claim against Riles Related to the Buchanan Street LHC Housing Package.**

To the extent that Plaintiff alleges that Riles was involved with "intercepting" and "altering" her housing package with LHC, such allegation is not a plausible claim for relief against Ries contrary to the dictates of *Iqbal*. Plaintiff plainly misidentifies Riles in paragraph 36 of the Complaint as being involved with her LHC housing package.

Riles is identified in the Complaint as a "judicial actor[] executing summary eviction records" (Rec. Doc. 1, ¶ 10) and as "Deputy Clerk of Zachary City Court" (Rec. Doc, 1, pg. 8.) Plaintiff alleges in paragraph 36 that "tracking coordinator *Hannah Ellis* and Winona Connor intercepted" the new property package submitted in the LHC portal and altered the contract parameters. (Emphasis supplied.) However, two paragraphs later, Plaintiff states that she sent a direct text message to Connor and co-defendant *Angela Davis* (not Riles), objecting to those "parameter modification[s]" and refusing to sign by the contract. Rec. Doc. 1, ¶38.

Defendant Davis, in turn, is identified in the Complaint as a "Section 811 PRA Administrator"[3] (Rec. Doc, 1, pg. 8) and listed as one of the ten individual defendants associated with LHC, all of whom are "responsible for the administration and tracking of federal housing assistance vouchers" (Rec. Doc, 1, ¶5). Further, Louisiana law establishes LHC, an instrumentality of the State of Louisiana[4], as the sole authority to coordinate housing programs administrated by the State, its agencies and instrumentalities. La. R.S. 40:600.86(B)(4). The purpose of LHC is to "achieve an adequate supply of affordable and accessible housing for all residents of the state", La. R.S. 40:600.86(B)(6), to ensure "all the residents of the state … have access to decent, safe, sanitary, accessible, and affordable housing", La. R.S. 40:600.86(B)(7), and to provide a "coordinated approach and clear statewide policy regarding funds" for residential housing for persons and families of low or moderate income, La. R.S. 40:600.86(B)(8). Accordingly, a deputy clerk for a municipal city court would have no involvement in or authority over a rental housing program, since as a matter of law, that is exclusively within the province of the LHC.

For these reasons, Plaintiff has not alleged a plausible claim for relief under *Iqbal* as it pertains to Plaintiff's housing package for rental a home on Buchanan Street. Any such claim against Riles stemming from such housing package must be dismissed.

**C. Plaintiff's Claims are Barred by Quasi-Judicial Immunity.**

A derivative of absolute judicial immunity, absolute quasi-judicial immunity is available to "other necessary participants in the judicial process" apart from the judges themselves. *Kirkendall v. Grambling & Mounce, Inc.,* 4 F.3d 989, 1993 WL 360732, *3 (5th Cir. 1993), citing *Johnson v. Kegans,* 870 F.2d 992, 996 (5th Cir. 1989). Quasi-judicial immunity extends to officials who "perform functions comparable to those of judges." *Da Vinci Inv., Ltd. Partnership v. Parker,*

[3] Section 811 PRA program is a federal project rental assistance program.
[4] La. R.S. 40:600.88.

622 F. App'x 367, 373 (5th Cir. 2015), citing *Beck v Texas Board of Dental Examiners,* 204 F.3d 629, (5th Cir. 2000). In determining whether an official is entitled to absolute quasi-judicial immunity, courts must take a "functional approach" – looking to "the nature of the function performed, not the identity or title of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Courts often hold that other judicial employees - such as clerks of court, law clerks, and others - enjoy absolute quasi-judicial immunity when "performing a discretionary act or . . . a ministerial function at the direction of the judge." *LaFrance v. New Orleans City*, 16-14439, 2017 WL 1050495, at *3 (E.D.La .3/17/17). "In other words, judicial employees are absolutely immune when they act, whether 'in bad faith or with malice' pursuant to a court order or a judge's instructions because the employee is 'act[ing] as the arm of the judge and comes within his absolute immunity.'" *Id.,* citing *Williams v. Wood,* 612 F.2d 982, 985 (5th Cir. 1980). "A judicial directive that cloaks court employees with absolute immunity may be formal and official, such as a court order, or more informal, such as verbal communication from a judge." *Id.*

"Clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks integral to the judicial process." *Evans v. Suter,* 260 F. App'x 726, 727 (5th Cir. 2007), *writ denied,* 552 U.S. 1282, 128 S.Ct. 1705, 170 L.Ed.2d 516 (2008). Courts within the Fifth Circuit have repeatedly found that the filing of documents into the record or sealing of documents submitted for filing is integral to the judicial process and, therefore, barred by absolute quasi-judicial immunity. *See, Aziz v. Washington,* 22-3129, 2023 WL 8664670, *2-3 (E.D.La. 12/15/23) *(*clerks alleged to have failed to file exhibits into the record entitled to quasi-judicial immunity*); Turner v. Go Auto Ins. Co.,* 22-582, 2022 WL 18283272, at *2 (W.D. La. Mar. 15, 2022), *report and recommendation adopted,* 2023 WL 187200 (W.D.La. 1/13/2023)

(allegations that certain documents were not properly filed by the clerk are barred); *Palowsky v. Benson,* 23-760, 2025 WL 540459, *4-5 (W.D.La 2/18/25) (filing and sealing of two sealed envelopes in suit records and refusing to allow litigant to view sealed envelope upon instruction from judge all found to be integral part of judicial process, entitling clerks to quasi-judicial immunity); *Evans, supra,* (claim against U.S. Supreme Court clerk for failure to file petitions for rehearing subject to quasi-judicial immunity); and *Johnson v. Russ,* 25-419, 2025 WL 2825610, *2 (M.D.La. 8/19/25) *report and recommendation adopted,* 2025 WL 2822477 (M.D.La. 10/3/25) (claims against clerk pertaining to the entering of a restraining order, petition and hearing order subject to absolute quasi-judicial immunity.)

Here, Plaintiff fails to identify any particular actions taken by deputy clerk Riles. However, she seems to complain that she hand-delivered discovery requests for municipal utility records to the Clerk's office. Rec. Doc. 1, ¶ 28. She seems to contend that there was some connection between her discovery filing "[a]head of her summary eviction hearing", Rec. Doc, 1, ¶ 28, and the subsequent hearing during which Judge Conachen "blocked" her evidence, Rec. Doc, 1, ¶31. Receiving and processing discovery-type requests is certainly integral to the judicial process. Further, to the extent that she contends that the hand-delivering of the discovery request to the Clerk filing window was connected to the evidentiary ruling by Judge Conachan, then deputy clerk Riles should be immunized from Plaintiff's claim herein.

Plaintiff has sued Riles in connection with her position as deputy clerk for the Zachary City Court. To the extent that specific allegations concerning receive and/or handling discovery requests can be gleaned from the complaint, which is a traditional judicial function, deputy clerk Riles is entitled to absolute quasi-judicial immunity and all claims against her should be dismissed.

**<u>D. Riles is Entitled to Qualified Immunity</u>.**

Government officials, performing discretionary functions, "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

Courts use a two-step method in determining whether a defendant is entitled to qualified immunity. See *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)(citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional right. *Pearson*, 555 U.S. at 232. In the second step, the district court must determine whether the right allegedly violated was clearly established at the time of the infraction. *Id.* The sequencing of the analysis has been left to the discretion of the Court to determine which of the two prongs should be analyzed first. *Id.* at 236. This inquiry must be undertaken in light of the specific factual context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable official that his conduct was unlawful in the situation which he confronted. See, *Id*.

"To determine that an official is not entitled to qualified immunity, the court must find that every reasonable officer would have understood that the alleged conduct violated a clearly established constitutional right." *Brauner v. Coody*, 793 F.3d 493, 497 (5th Cir. 2015)(citing *Lytle*

*v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009)). "Once defendants assert the qualified immunity defense '[t]he plaintiff bears the burden of negating qualified immunity…but all inferences are drawn in his favor." *Id,* 793 F.3d at 497 (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). Specifically, a plaintiff must allege both (1) the violation of a federal constitutional or statutory right; and (2) that the right was clearly established at the time. *Babinski v. Sosnowsky,* 79 F.4th 515, 520 (5th Cir. 2023). A "plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc,* 691 F.3d 645, 648 (5th Cir. 2012).

To the extent that Plaintiff's allegations against Riles are not subject to absolute quasi-judicial immunity, as discussed above, she nevertheless enjoys qualified immunity for such acts. Clerks of court enjoy qualified immunity for routine duties not explicitly commanded by either court decree or judicial instruction. *Burnett v. Denman,* 368 F.3d.Appx. 603, 604 (5th Cir. 2010), citing *Tarter v. Hury,* 646 F.2d 1010, 1013 (5th Cir. 1981). Qualified immunity has been applied to instances in which a clerk has informed a plaintiff that a judge dismissed his malpractice suit, *Burnett, supra,* where a clerk allegedly mailed a judgment to an old address, requested payment for filings and prepared the appellate record, *McCoy v. McCormick,* 22-443, 2023 WL 3010215, *18-19 (M.D. La. 2/12/23), *report & recommendation adopted,* 2023 WL2428214, (M.D.La. 3/9/23); and opening and copying envelopes "behind closed doors" without litigant or court reporter's presence, *Palowsky,* 2025 WL 540459 at *5-6.

Here, Riles, as a deputy clerk for the City Court of Zachary, is employed and instructed to accept and file legal documents, prepare the civil docket and prepare pleadings for consideration by the City Court judge. With respect to the Section 1983 claim, there are no factual allegations

that Riles committed any acts that deprived Plaintiff of either her federal housing voucher or "contractually guaranteed stabilization benefits" (Rec. Doc. 1 p. 4). In fact, Plaintiff's own allegations reveal that she was given all process due to her in the eviction proceeding, the only proceeding to which Riles was remotely connected. Because Plaintiff has failed to demonstrate a violation of a clearly established right by Riles, she is entitled to qualified immunity as to the Section 1983 claim.

As to the Section 1985 claim, Plaintiff does not allege any race-based or class-based discrimination that she suffered by Riles. In fact, it is not clear what protected status Plaintiff even alleges. Nor does she identify any facts as to how Riles specifically treated her differently due to Plaintiff's race or other protected class. A simple conclusory statement that her equal protection rights were violation does not demonstrate a violation of clearly established federal constitutional or statutory right. As such, Riles is entitled to qualified immunity as to the Section 1985 claim as well.

## III. CONCLUSION

In light of the foregoing, Defendant, Hannah Riles (improperly referred to as "Hannah Ellis") respectfully requests that her motion be granted and that Plaintiff's claims against her be dismissed with prejudice.

Respectfully submitted,

/s/ Jacqueline B. Wilson
Jacqueline B. Wilson, La. Bar Roll No. 31055
City Attorney for the City of Zachary
**CITY OF ZACHARY**
4700 Main Street
Zachary, Louisiana 70791
Telephone: 225-654-0287
Email: jacqueline.wilson@cityofzachary.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of October, 2026, the foregoing was filed electronically with the Clerk of Court by using the CM/ECF system, which served by electronic means, all participating counsel of record and upon the *pro se* plaintiff by electronic transmission at xo83beautifuldisaster89xo@gmail.com.

_/s/ Jacqueline B. Wilson__
JACQUELINE B. WILSON